UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Robert Hollinger, | : | No. |
| Plaintiff | : | |
| v. | : | Civil Action – Law |
| | : | |
| Metropolitan Life Insurance | : | |
| Company, Met Disability, | : | |
| Defendant | : | Jury Trial Demanded |

## COMPLAINT (CIVIL ACTION)

NATURE OF ACTION

1.

This is an action for declaratory and monetary relief arising from the denial of health insurance benefits to the Plaintiff by the Defendant under the provisions of the Home Depot Welfare Benefits Plan (hereinafter referred to as "Plan").  Plaintiff asserts a violation of rights guaranteed under the Employee Retirement Income Security Act of 1974 (hereinafter referred to as "ERISA") (29 U.S.C. § § 1001 et seq.)

JURISDICTION

2.

This Court has subject matter jurisdiction over plaintiff's claims under the provisions of ERISA, 29 U.S.C. § 1132(e).

## VENUE

3.

Pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1121 (e)(2)), venue lies in the Middle District of Pennsylvania because the Plan is administered in the Middle District, the breach took place in the Middle District, and Defendant maintains offices in the Middle District.

## PARTIES

4.

Plaintiff, Robert Hollinger, is an adult individual residing at 54 Theatre Lane, York, Pennsylvania 17402.

5.

Defendant, Metropolitan Life Insurance Company, Met Disability (hereinafter referred to as "MetLife"), administrator of the short term disability provisions of the Plan, is an insurance company licensed to transact business in the Commonwealth of Pennsylvania with disability claims management located at P.O. Box 14590, Lexington, KY 40511-4590.

## FACTS

6.

On or about December 6, 2005, Plaintiff, Robert Hollinger, was employed by Home Depot in York, Pennsylvania.

7.

At all times material hereto, Plaintiff's position with Home Depot was "Receiving Department Supervisor". Plaintiff's duties included loading and unloading products coming into the store from trucks, and transferring and stocking products out to the floor.

8.

Plaintiff, as a Receiving Department Supervisor, was required to operate slip sheet, fork lift, and other heavy equipment to quickly unload trucks; and his performance was rated based on his ability to unload trucks in a timely manner.

9.

Home Depot's functional requirements of a Receiving Department Supervisor include lifting, carrying, pushing, or pulling 50-100 pounds occasionally, 20-50 pounds frequently, up to 20 pounds constantly, and standing or walking frequently.

10.

At all times material hereto, Plaintiff was earning approximately $19.25 per hour working for Home Depot.

11.

On or about December 6, 2005, Plaintiff experienced shortness of breath with exertion, chest discomfort, tiredness, joint pain and lack of energy and was sent to the emergency room at Memorial Hospital in York, Pennsylvania by the Home Depot Store Manager.

12.

Plaintiff was admitted to and treated at the Memorial Hospital emergency room where laboratory tests and x-rays were performed, including an EKG, chest x-ray and CT scan for Pulmonary Emboli, and he was examined by his treating physician, Dr. Robert L. Stremmel, D.O.

13.

On or about December 10, 2005, Plaintiff received a telephone call from the

Memorial Hospital lab or emergency room, informing him that he had mononucleosis.

14.

On or about December 12, 2005, Plaintiff was under the regular care of a licensed physician, Dr. Robert L. Stremmel, D.O., who excused Plaintiff from work at Home Depot due to Plaintiff's inability to perform the functional requirements of his job, due to tiredness, shortness of breath, coughing and hoarseness and continued abdominal bloating. Dr. Stremmel diagnosed mononucleosis, dyspnea, fatigue, and laryngitis.

15.

Home Depot's employment guidelines require that an employee can not return to work until the attending physician releases the employee to return to work.

16.

While on medical leave from work, Dr. Stremmel referred Plaintiff to an Internal Medicine specialist, Dr. Illfelder, to be examined for irregular bowel movements, and Plaintiff was treated with antibiotics for laryngitis. Plaintiff was diagnosed shortness of breath with exertion, chest discomfort, tiredness, joint pain and lack of energy, with mononucleosis based on E.D. testing, dyspnea, fatigue, and laryngitis.

17.

Dr. Stremmel determined and rendered his opinion that Plaintiff was not medically able to perform the functional requirements of his job as a Receiving Department Supervisor at Home Depot due to extreme fatigue and an irregular heartbeat, and issued a disability note for an additional two (2) weeks following his visit with Dr. Illfelder, to January 11, 2006.

18.

On or about January 9, 2006, Dr. Stremmel determined and rendered his opinion that Plaintiff continued to be unable to perform his job functions and return to work, for an "undetermined" period, due to fatigue and an irregular heart beat.

19.

Office examinations of Plaintiff by Dr. Stremmel on January 16, 2006, February 6, 2006, and February 27, 2006 showed very little improvement in his symptoms, and Dr. Stremmel ordered Plaintiff not to return to work because he could not perform his job functions due to his diagnosis of mononucleosis, fatigue, chest pain, irregular heart beat, and abdominal bloating.

20.

On or about March 13, 2006, Dr. Stremmel determined that Plaintiff was improving, and he released Plaintiff to return to work on or after March 14, 2006.

21.

As part of the Plan of Plaintiff's employer Home Depot, Defendant, Met Life, administered a disability insurance policy that was available to all employees and was in effect on or about December 5, 2005.

22.

While Plaintiff currently does not have a copy of the abovementioned Plan as it is in the Defendant's possession and Plaintiff was not provided with a copy, a summary of its disability provisions provided to Plaintiff is attached as Exhibit A.

23.

Based upon available information, it is Plaintiff's belief that the Plan provides that

Defendant Met Life as Plan Administrator has the discretion to determine claimant eligibility for disability under the Plan, to interpret the terms of the Plan, and to pay benefits under the Plan.

24.

At all times material hereto, Plaintiff opted for benefit choices and payroll deductions through Home Depot, and chose to benefit from, among other things, the Short-Term Disability option of the Plan.

25.

The Home Depot Disability Plan summary states that :

> After 14 consecutive calendar days of an illness or injury during which you are unable to work, the Short –term Disability Plan will pay 66.67% of base pay for an approved period of disability, not to exceed 24 weeks.

Exhibit A, p.17FTH

26.

The Home Depot Disability Plan summary further states that to qualify for short-term disability benefits, all of the following must be met:

> you must be under the care of a qualified doctor…;
> you must not be able to perform the duties of your regular job; and MetLife must receive certification accompanied by appropriate medical documentation of a disability from your attending doctor before benefits are considered for payment.

Exhibit A, p. 17FTH

27.

Plaintiff was unable to work at Home Depot from December 6, 2005 to March 13, 2006 due to illness, a total of 98 consecutive days, hereinafter referred to as "Disability

Period".

28.

Plaintiff was under the care of a Dr. Stremmel, a qualified and licensed doctor.

29.

In the opinion of Dr. Stremmel, Plaintiff was not able to perform the functional duties of his Home Depot regular job and he ordered "no work".

30.

Defendant MetLife received the certification of disability and medical documentation of Plaintiff's disability from Dr. Stremmel.

31.

After the onset of his disability, Plaintiff underwent reasonable and necessary treatment from several qualified physicians for his disabilities.

32.

Plaintiff's medical treatment was medically necessary, and he was disabled and unable to perform the functional requirements of his job because of his poor health conditions, including mononucleosis and severe fatigue.

33.

During his disability, Plaintiff suffered lost wages in the approximate amount of $15,092, had he been working eight hours per day, forty hours per week, during the Disability Period.

34.

Pursuant to the Home Depot short term disability policy summary, Plaintiff was to receive 66.67% of all of his base pay during the time frame that he disabled, not to

exceed 24 weeks. Exhibit A, p. 17FTH.

35.

Plaintiff should have received approximately $10,062 in total short term disability payments under the provisions of the Plan.

36.

Dr. Stremmel, Plaintiff's qualified, legally licensed treating doctor, who was performing services within the scope of his license, certified that Plaintiff was clearly disabled and could not work as a Receiving Department Supervisor with Home Depot during the Disability Period.

37.

On or about February 6, 2006, Dr. Stremmel completed a Supplemental Attending Physician Statement on behalf of Plaintiff, to be returned to Defendant Met Life, diagnosing infectious mononucleosis and severe fatigue, with total disability and being unable to perform the functional requirements of his Home Depot job.

38.

On or about February 14, 2006, the abovementioned statement was faxed by Dr. Stremmel's office at Mill Creek Family Medicine to Defendant Met Life.

39.

On or about February 27, 2006, Defendant Met Life refused Plaintiff's claim for short-term disability benefits on the basis that there was

> "… no clinical evidence to support a severe functional impairment that prevents you from safely performing the functional duties as a receiving dept [sic] supervisor, which is considered a heavy job."

> "Your physicians have not given any clinical findings that

would indicate a severe impairment to prevent you from being able to safely perform the essential duties of your job."

40.

On or about March 13, 2006, Plaintiff timely appealed Defendant's decision to deny him short term benefits under the Plan.

41.

On or about March 14, 2006, Defendant informed Plaintiff that it received his appeal and that the claim had been referred for an "independent" review.

42.

Defendant, Met Life, then retained two "independent physician consultants" to review Plaintiff's appeal.

43.

On or about April 4, 2006, Dr. Mark Schroeder, M.D., conducted a physician consultant review of Plaintiff's claim file.

44.

In Dr. Schroeder's report, he stated that he did not think Plaintiff was disabled during the time in question because "[t]he providers did not give a detailed description of the employee's functional abilities since he left work."

45.

On or about April 4, 2006, Dr. Robert C. Porter, M.D., conducted a physician consultant review of Plaintiff's claim file.

46.

In Dr. Porter's page and a half report, he posed the question "Does the medical

documentation support functional limitations beyond 12/15/2005?," and answered the question with one word, "No."

47.

On or about April 4, 2006, Plaintiff's treating physician, Dr. Stremmel, prepared a report with a detailed description of the Plaintiff's functional disabilities and inability to perform his job duties during the Disability Period.

48.

Dr. Stremmel stated in the report that Plaintiff was given a disability note because "[h]e was not able to perform the duties of his regular job."

49.

Upon receiving Dr. Stremmel's report, Defendant forwarded the report to Dr. Porter, but did not provide a copy of the report to Dr. Schroeder.

50.

On or about April 19, 2006, Dr. Porter wrote a second report for Defendant Met Life and posed the following question: "Does the medical documentation support functional limitations beyond 12/14/05?," and answered:

> "No. See prior report. The letter from Dr. Stremmel does
> not provide additional information and does not change my
> prior assessment."

51.

On or about April 25, 2006, Plaintiff received a letter from Defendant MetLife stating that the original decision to deny benefits was upheld.

52.

In its decision, Defendant explained it denied Plaintiff's claim because:

> Additional medical information was received on April 13, 2006 and was referred to the Occupational Medicine consultant [Dr. Porter] for review. The consult indicated that he had been provided with a letter from Dr. Stremmel, who provided a summary of your complaints. The consultant concluded that the information provided by Dr. Stremmel was known to the consultant in his prior assessment, and did not change his opinion.

53.

Further, Defendant, in upholding its decision to deny short term disability benefits to the Plaintiff under the Plan, stated that:

> "[a]s indicated in the reports of the consultants that reviewed the file, proof that you were disabled had not been provided. The consultants concluded that the clinical information provided did not support a severity of impairment that would have prevented you from performing the duties of your job."

54.

To date, Defendant has refused to pay the Plaintiff's disability claims under the Plan. As a result, Plaintiff has been required to hire the services of an attorney to collect the disability payments due from Defendant under the Plan.

**COUNT I**
**CLAIM FOR BENEFITS**

55.

Plaintiff incorporates Paragraphs 1 through 54 herein as though fully set forth at length.

56.

Pursuant to § 502 of ERISA, (29 U.S.C. § 1132(a)1B), a civil action may be brought to recover benefits due under the terms of a plan, to enforce rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan.

57.

Defendant's denial of the initial claim for short term disability benefits to Plaintiff under the Plan and the upholding of the denial on appeal were an abuse of discretion, biased and unfair because they overruled the diagnoses and opinions of Dr. Stremmel, Plaintiff's treating physician, and relied exclusively on the reviews of Defendant's consultants Dr. Mark Schroeder, M.D. and Dr. Robert Porter, M.D.

58.

The review by Dr. Porter of the medical documentation submitted by Plaintiff was superficial, cursory and incomplete, and relied on inadequate information to conclude that the Plaintiff was not disabled because he did not clinically prove the reasons for his disability.

59.

Dr. Porter did not personally examine Plaintiff.

60.

Plaintiff's treating physician Dr. Stremmel was not given the opportunity to communicate directly with Defendant's reviewers, Drs. Porter and Schroeder, to discuss the reasons he certified Plaintiff as disabled, and unable to perform his job duties.

61.

Defendant's policy to utilize independent medical reviewers to evaluate a disability claim without requiring an actual physical examination of an insured or that the reviewer contact the treating and disability certifying physician before a claim is denied is a policy that has been established to deny disability claims of Plaintiff's nature that

are difficult to clinically document, and is an example of bad faith and a breach of fiduciary responsibility.

62.

Defendant's use of a "psychiatric consultant" and an "occupational medicine consultant" instead of a "family doctor" was unfair because the review of Plaintiff's disability claim should have been performed by a physician in the same specialty and capacity as the Plaintiff's treating physician whose disability determinations were under review.

63.

Defendant's denial of short term disability benefits to Plaintiff under the Plan was an abuse of discretion because the Plan did not require Plaintiff to submit "clinical evidence" of a disability, but "appropriate medical documentation."

64.

Defendant's denial of short term disability benefits to Plaintiff under the Plan was an abuse of discretion because the Plaintiff did exhibit the symptoms such as tiredness, fatigue, obstructed breathing, that supported a diagnosis of mononucleosis.

65.

By relying exclusively on reviews of practitioners of varying specialties while overruling the opinions and diagnoses of Plaintiff's treating physician, and withholding payments with no authority to do so, Defendant has undertaken a course of action which has been designed to unilaterally and without justification refuse claims for disability benefits causing Plaintiff to suffer financial damages.

66.

By failing to pay Plaintiff's short term disability benefit payments, Defendant has violated, and continues to violate, the terms of the Plan and Plaintiff's rights thereunder.

WHEREFORE, Plaintiff now respectfully demands a $10,062 payment of the short-term disability benefits due, plus interest, and reasonable attorney's fees and costs pursuant to ERISA § 502 (g), 29 U.S.C. § 1132(g).

Respectfully submitted,

The Law Offices of Donald L. Reihart

Date: February 18, 2008          BY: /s/ Donald L. Reihart, Esq.
                                 Donald L. Reihart
                                 Supreme Court I.D. #07421
                                 3015 Eastern Boulevard
                                 York, Pennsylvania 17402
                                 717-755-2799
                                 Attorney for Plaintiff


                                 BY: /s/ David S. Craun, Esq.
                                 David S. Craun
                                 Supreme Court I.D. #75550
                                 3015 Eastern Boulevard
                                 York, Pennsylvania 17402
                                 717-755-2799
                                 Attorney for Plaintiff