```
        IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
```

```
ROBERT HOLLINGER,              :
          Plaintiff
                               :
          vs.                  :    CIVIL NO. 1:CV-08-0306
                               :
METROPOLITAN LIFE INSURANCE
COMPANY, MET DISABILITY,       :
          Defendant
```

*M E M O R A N D U M*

*I.   Introduction*

We are considering a motion for summary judgment filed by the Defendant, Metropolitan Life Insurance Company ("MetLife").  Plaintiff, Robert Hollinger ("Hollinger"), filed this lawsuit pursuant to section 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), for wrongful termination of short-term disability ("STD") benefits.

We will examine the motion under the well-established standard.  *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d. Cir. 2008). Upon review of the motion, the supplemental briefs, and the administrative record, we will grant Defendant's motion for summary judgment and enter judgment in favor of MetLife.[1]

---

[1] Defendant's brief in support of its motion violates Local Rule ("LR") 7.8 in several respects.  First, the brief, 23 pages in length, violates LR 7.8(b) by being in excess of 15

*II.   Background*

Hollinger was employed by Home Depot, Inc. as a Receiving Department Supervisor.  On December 6, 2005, he went to the emergency room ("ER") complaining of fatigue, weakness and shortness of breath.  Pl.'s Br. In Opp. at 2.  The treating ER physician ordered blood work, which later indicated both an elevated Epstein-Barr titer and liver enzyme, which may indicate the presence of illness.  Hollinger followed up with his family physician, Dr. Robert Stremmel, for further treatment and care. Dr. Stremmel diagnosed Hollinger with dyspnea, fatigue and laryngitis, and noted that the ER diagnosed mononucleosis.[2] Def.'s Ex. A at 9.  On December 14, 2005, Hollinger ceased work claiming mononucleosis and fatigue.  Def.'s Statement of Material Facts ("SMF") ¶ 7.  He was seen by Dr. Illfelder on December 26, 2005 complaining of gastrointestinal problems. After examination, Dr. Illfelder diagnosed panic attacks. Def.'s Ex. A at 47.  On reevaluation, Dr. Illfelder again

---

pages without a certificate indicating it does not exceed 5,000 words.  Second, it violates LR 7.8(a) by being in excess of 15 pages without accompanying table of contents and table of authorities.  Finally, Defendant did not seek prior authorization to file a brief in excess of the page limit as required by LR 7.8(b)(3).  Counsel is requested to become conversant with Local Court Rules and to comply with them in any future litigation.

[2]  Hollinger visited Dr. Stremmel several times after his initial visit.  This culminated in Dr. Stremmel prescribing "no work" for the foreseeable future on January 9, 2006.  Def.'s Ex. A at 23.

2

diagnosed panic attacks and noted that Hollinger did not have "clear-cut symptoms of mononucleosis." *Id.* at 53.

On January 26, 2006, Hollinger applied for short-term disability ("STD") benefits pursuant to the Home Depot Welfare Benefits Plan (the "Plan"). In order to qualify for benefits, the Plan provides that:

> • the disability period must be expected to last more than 14 consecutive calendar days...;
>
> • you must be under the care of a qualified doctor (qualified doctors include legally licensed physicians and practitioners who are not related to you and are performing services within the scope of their licenses);
>
> • you must not be able to perform the duties of your regular job; and
>
> • MetLife must receive certification accompanied by appropriate medical documentation of a disability from your attending doctor before benefits are considered for payment.

Def.'s Ex. A at 445. On February 3, 2006, MetLife initially denied Hollinger's claim because it did not receive medical records in support of his claim. Def.'s SMF ¶ 9. After receipt of the medical records, MetLife noted that the file lacked 1) diagnostic tests that Hollinger had mononucleosis; 2) physical findings such as sore throat, swollen glands or an abnormal white cell count; 3) neurological evaluations or diagnostic tests for dizziness and disorientation; and 4) psychological evaluation for panic attacks. Def.'s SMF ¶ 27.

On February 27, 2006, MetLife denied benefits concluding that the clinical evidence did not support the finding that Hollinger was unable to perform the duties of his job. Def.'s Ex. A at 26-28. Based on the medical information provided by Hollinger's physicians, MetLife concluded that the medical evidence lacked abnormal findings, the diagnostic tests did not include a mononucleosis test that would indicate an current case of illness and the physical exams lacked findings such as a fever, sore throat, swollen glands or an abnormal white blood count. *Id.* at 27. Hollinger was advised that he could appeal the decision by submitting any additional comments, documents, records or other information relevant to his claim. Def.'s SMF ¶ 34.

On appeal, Hollinger's claim was reviewed by two medical consultants, an occupational medicine physician and a psychiatrist. The occupation medicine consultant, Dr. Robert Porter, concluded that the diagnosis of mononucleosis was not supported by the medical evidence. Def.'s SMF ¶ 39. The psychiatrist, Dr. Mark Schroeder, concluded that the medical evidence does not support the presence of a psychiatric disability. Def.'s SMF ¶ 41. After further information was received from Dr. Stremmel and reviewed by Dr. Porter, MetLife concluded on appeal that the benefits denial would be upheld. Plaintiff then filed the instant action.

4

*III. Discussion*

    *A. ERISA Standard of Review*

Courts apply a *de novo* standard of review "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Where an administrator retains this authority, courts apply an arbitrary and capricious standard of review. *Orr v. Metropolitan Life Insurance Co., Inc.*, No. CV-04-0557, 2007 WL 2702929, at *11 (M.D. Pa. Sept. 13, 2007)(citing *Abnathya v. Hoffmann-LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993)). Under an arbitrary and capricious standard of review, we may overturn an administrator's decision to deny benefits "if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Abnathya*, 2 F.3d at 45 (quoting *Adamo v. Anchor Hocking Corp.*, 720 F.Supp 491, 500 (W.D. Pa. 1989)). In considering a claim, however, we may not substitute our judgment for that of the plan administrator. *Stratton v. E.I. DuPont De Nemours & Co.*, 363 F.3d 250, 256 (3d Cir. 2004). Our review should be based on the record available to the plan administrator and should not represent our independent judgment of the claimant's disability. *Orr*, 2007 WL 2702929, at *11 (citation omitted).

5

Prior to *Metropolitan Life Insurance Co. v. Glenn*, ___U.S.___, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008), several courts, including the Third Circuit, applied a modified form of deferential review in determining whether a plan administrator abused its discretion. *See Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377 (3d Cir. 2000). This heightened standard of review or sliding scale approach is no longer applicable in light of the Supreme Court's decision in *Glenn*. *Estate of Kevin Schwing v. The Lilly Health Plan*, ___F.3d___, 2009 WL 989114, at *2 (3d Cir. Apr. 14, 2009). In *Glenn*, the Supreme Court concluded that a conflict of interest does not alter the standard of review from deferential to *de novo* review. *Glenn*, 128 S.Ct at 2350. Instead, any conflict of interest is "but one factor among many" that a judge must take into account. *Id*. at 2351; *See Estate of Schwing*, 2009 WL 989114 at *2. The Supreme Court believed that it was not necessary or desirable for "courts to create special burden-of-proof rules, or other special procedural or evidentiary rules." *Id*.

The Third Circuit's recent opinion in *Estate of Schwing* clarifies that the sliding scale approach is no longer applicable. *Estate of Schwing*, 2009 WL 98114 at *2. We should apply a deferential abuse of discretion standard and consider any conflict of interest as one of several factors in our analysis. *Id.* Some of the factors we may consider include "procedural concerns about the administrator's decision making

6

process and structural concerns about the conflict of interest inherent in the way" the Plan was funded. *Id.* at *3. Procedural bias may be visible in an administrator's self-serving use of one doctor's expertise, an inconsistent treatment of the same facts, or, when confronted with a decision, repeatedly choosing the option disfavorable to the claimant. *Kosiba v. Merck & Co,* 384 F.3d 58, 66 (3d Cir. 2004)(citation omitted). As MetLife had discretion to evaluate claims, and is acting as both evaluator and payor, we will apply an arbitrary and capricious standard of review and evaluate any conflict of interest as one factor in our analysis.

    *B. Analysis of Hollinger's Claim*

MetLife argues that its decision to deny benefits was reasonable, supported by substantial evidence, and consistent with the language of the Plan. In opposition, Hollinger claims that he has met all the criteria under the Plan to qualify for benefits and MetLife's denial is arbitrary and capricious in light of the evidence. Specifically, Hollinger argues that: 1) MetLife initially denied his benefits without a proper review; 2) MetLife refused to consider the opinions of his treating physicians; 3) Metlife disregarded the evidence of mononucleosis; and 4) MetLife ignored his subjective medical complaints. Pl.'s Br. In Opp'n. at 14 and 17.

After considering the decision-making process, we conclude that MetLife did not arbitrarily and capriciously deny

Hollinger's benefits claim.  In our analysis, we focus on MetLife's treatment of the reports of Hollinger's treating physicians and the procedures employed in denying the claim. Dr. Stremmel diagnosed Hollinger with mononucleosis, fatigue and recommended he be taken off work.  Dr. Stremmel also submitted a report supporting Hollinger's disability claim.  Def.'s Ex. A at 9.  Dr. Illfelder, however, diagnosed Hollinger with a recurrence of panic attacks and prescribed medication.  *Id.* at 47.  Dr. Illfelder reevaluated Hollinger on January 11, 2006, and determined that Hollinger, in spite of an elevated Epstein-Barr titer, did not have clear cut systems of mononucleosis. *Id.* at 53.

Hollinger claims MetLife's initial denial was due to an arbitrary determination that his disability would not last longer than 14 days.  However, the evidence does not support this contention.  MetLife informed Hollinger, when he called inquiring about the initial denial, that his benefits were denied because MetLife did not receive the necessary supporting medical records, not because his disability did not meet the requisite time period.  Def.'s Ex. A at 91-92; Def.'s SMF ¶ 9. It was on February 16, 2006 that MetLife finally received additional medical documentation in support of Hollinger's claim, and it was sent for review.  Def.'s SMF ¶¶ 14, 15.

Hollinger argues that MetLife ignored evidence indicating mononucleosis, namely pointing to the positive

8

Epstein-Barr titer and elevated liver enzyme results, when it denied his claim. The evidence shows that MetLife did not address the elevated liver enzyme. However, Dr. Stremmel and Dr. Illfelder also did not indicate the presence of an elevated liver enzyme or how this enzyme affected their diagnosis. This one omission, though relevant, does not clearly indicate that MetLife ignored the evidence for mononucleosis. On the contrary, MetLife addressed many aspects of the medical records, even noting the elevated Epstein-Barr titer and referencing Hollinger's subjective complaints. Def.'s Ex. A at 94-95. The evidence indicates an omission on the part of MetLife, but not that it attempted to ignore any evidence of mononucleosis.

     The evidence also indicates that MetLife did not ignore the findings of the treating physicians. Instead, the evidence shows the consultants disagreed with some of the treating physicians' conclusions. On appeal from the denial of benefits, MetLife had Hollinger's file reviewed by occupational medicine and psychiatric consultants. Dr. Porter determined that the testing, medical history and physical exam did not support the diagnosis of mononucleosis. *Id.* at 10-11. He indicated that a positive Epstein-Barr titer is common in the general population and indicates past exposure to the illness, not necessarily a current case of the illness. *Id.* at 10. Agreeing with treating physician Dr. Illfelder, Dr. Porter found that the symptoms and examinations were not consistent with a

diagnosis of mononucleosis.  Additionally, Dr. Schroeder determined that the evidence did not indicate a psychiatric impairment that would prevent Hollinger from performing the functions of his job.  *Id.* at 15.  He reached this conclusion because Hollinger's medical information did not contain records from a mental health specialist.  *Id.* at 14.

MetLife's determination that Hollinger could perform the essential functions of his occupation was reasonable.  The evidence shows that MetLife engaged in a thorough review process using the medical information provided by Hollinger's treating physicians.  The evidence also shows that Hollinger was afforded an initial review, and then an appeal when his claim was denied.  During this second review, MetLife's consultants did not ignore the evidence of the treating physicians.  Instead, they disagreed with Dr. Stremmel's conclusion that Hollinger was suffering from a disability.  Disagreement between physicians and consultants is not per se improper as long as the treating physicians impressions are not arbitrarily discredited.  *See Orr*, 2007 WL 2702929, at \*19.  Here, Plaintiff's other treating physician, Dr. Illfelder, did not agree with the diagnosis of mononucleosis.  This disagreement between Hollinger's treating physicians supports MetLife's contention that the evidence did not support a diagnosis of acute mononucleosis and that it did not arbitrarily discredit Dr. Stremmel's findings.

10

Hollinger's accusation that procedural bias existed is also refuted by the evidence. A review of the record reveals no procedural anomalies in the evaluation of the claim. The Plaintiff has also failed to produce evidence that MetLife acting as both evaluator and payor of the claim allowed any conflict of interest to influence its decision. We conclude that MetLife's denial was not arbitrary and capricious. Even if we were to apply a heightened standard of review, Plaintiff's claim would fail. Therefore, we will grant Defendant's motion for summary judgment.

                                            /s/William W. Caldwell  
                                            William W. Caldwell  
                                            United States District Judge

Date: April 16, 2009

```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


ROBERT HOLLINGER,              :
     Plaintiff
                               :

     vs.                       :    CIVIL NO. 1:CV-08-0306

                               :
METROPOLITAN LIFE INSURANCE
COMPANY, MET DISABILITY,       :
     Defendant
```

*O R D E R*

AND NOW, this 16th day of April, 2009, upon consideration of the Defendant's motion for summary judgment (doc. 14), and pursuant to the accompanying Memorandum, it is ordered that:

   1. Defendant's Motion for Summary Judgment is granted.

   2. Judgment is entered in favor of Defendant Metropolitan Life Insurance Co. and against Plaintiff Robert Hollinger.

   3. The Clerk of Court shall close this file.

                              /s/William W. Caldwell
                             William W. Caldwell
                             United States District Judge